1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MICHAEL WILLIAMSON,

10

                              Plaintiff,

              v.

11

12

INTEGON NATIONAL INSURANCE
COMPANY,

13

14

                              Defendant.

No.  2:21-cv-1450-BJR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

15

16

### I.      **INTRODUCTION**

17

18

19

20

21

22

23

24

        This lawsuit arises from a dispute as to automobile insurance coverage between Plaintiff Michael Williamson ("Plaintiff") and Defendant Integon National Insurance Company ("Integon" or "Defendant").  Plaintiff asserts various claims arising from Defendant's denial of coverage for damage to Plaintiff's car.  Presently before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims ("Motion" or "Mot.," Dkt. 14).  Having reviewed the Motion, the record of the case, and the relevant legal authorities, the Court GRANTS Defendant's motion for summary judgment.  The reasoning for the Court's decision follows.

25

26

ORDER - 1

## II.   <u>BACKGROUND</u>

### A.   Factual Background

#### 1.   Plaintiff's Insurance Claim and Integon's Denial of Coverage

On January 17, 2021, Plaintiff filed an insurance claim for damage to his car, a 2012 Mazda sedan, under an automobile insurance policy (the "Policy") that Integon had issued to him. Declaration of Kam Naziri ("Naziri Decl.," Dkt. 16), Exs. 1, 6.  In a recorded statement Plaintiff provided to Integon the next day, he explained that, on the night of January 16, he had parked his car in street parking outside of his apartment building, and at some time thereafter while he was asleep inside his apartment, his car was struck and damaged by a hit-and-run driver.  *Id.*, Ex. 2. Amie Hudson, the apartment building's Community Manager, declares that on January 17, the day Plaintiff filed his claim, he had informed her "that one of his vehicles was damaged while in the [apartment building] parking lot, where there is video surveillance."  Declaration of Amie Hudson ("Hudson Decl.," Dkt. 18) ¶¶ 1, 3. "Shortly thereafter," according to Hudson, "he changed his story … and stated that the vehicle was damaged while parked on a nearby street, away from … video surveillance."  *Id.* ¶ 3.

Integon initiated a coverage investigation, and one of its employees conducted a physical inspection of the car on January 19.  Naziri Decl., Ex. 3.  The inspector's notes reflect her conclusion that the vehicle's damage – which was significant, and located primarily around the front right wheel – was inconsistent with Plaintiff's explanation as the cause of that damage:

> All Damage DOES NOT APPEAR consistent with loss description: "Hit While Parked Unknown" Extensive damage to Right Front Corner.  The bumper is cut off on the right side, dented in the center with the license plate bracket, cut off on left side and the entire bottom of the cover is cut off.  The Right Fender is dented and buckled as well as cut and sliced open just in front of the wheel opening area – this does not appear to be from another vehicle ….  This extensive damage would have left debris all around the vehicle where the impact occurred.

ORDER - 2

*Id.*

Integon subsequently engaged Traffic Collision Consultants ("TCC") to provide an expert opinion as to cause of the vehicle's damage.  Declaration of Daniel Mahoney ("Mahoney Decl.," Dkt. 19), Ex. B.  TCC's report concluded, based on its review of photographs of the damage and collision site, among other things, that the damage was "not consistent with the [] vehicle having been struck by a hit and run vehicle, while parked and unattended on the street."  *Id.*, Ex. B at 8, 10.  Rather, the photographs "show damage consistent with the [] vehicle having been dynamic (in motion) and moving forward while turning to the right when it struck a narrow, non-vehicular (pole-type) object."[1]  *Id.*  On February 12, 2021, Integon sent Plaintiff a letter informing him that coverage was being denied on the ground that he had "mispresented material facts during the presentation of the claim."  Naziri Decl., Ex. 5.

### 2.    Plaintiff's Lawsuit and Further Expert Reports

Plaintiff filed suit on April 20, 2021 in Washington Superior Court for King County, asserting breach-of-contract and extra-contractual claims arising from Integon's denial of coverage for the damage to his car.  Complaint ("Compl.," Dkt. 1-2).  While the lawsuit was pending in state court, TCC issued, in August 2021, a supplemental report on the damage based on a physical inspection of the car and an analysis of computerized data obtained from the vehicle's Event Data Recorder ("EDR").  Mahoney Decl., Ex. C.  According to that report, the EDR data showed that, immediately before the collision, "the [] vehicle had been traveling at a speed of 27 mph before applying the brakes and slowing to 24 mph when impact occurred," after which point the "vehicle rebounded rearward."  *Id.*, Ex. C at 4-5.  The report further found, based on an inspection of the

---

[1] TCC's conclusion was informed by the "[t]he narrowness of the contact damage coupled with the vertical height of the damage," which was "consistent with contact to a pole-type object and not from another vehicle."  Mahoney Decl., Ex. B at 9.

ORDER - 3

car's headlight filaments, that the headlights were illuminated at the time of the collision.  *Id.*, Ex. C at 6.  In light of those findings, the report restated TCC's prior conclusion that "the [] vehicle was in motion and moving forward when it struck a narrow, non-vehicular object," and "that the observable damage could not have occurred as originally stated" by Plaintiff.  *Id.*

In response to TCC's reports, Plaintiff engaged his own expert, Luker Forensic ("Luker"), which issued a report in October 2021 concluding that the vehicle's damage was consistent with Plaintiff's account.  Neal Decl., Ex. 3.  That conclusion was based, in part, on a declaration that had been provided by a building maintenance supervisor – but which was not attached to the report – as to debris he observed where Plaintiff claimed the collision took place.  *Id.*, Ex. 3 at 2-3, 7.  The conclusion was also based on a review of photographs of the damage, which Luker compared to other vehicles that had sustained similar damage.  *Id.*, Ex. 3 at 2, 5-7.  The report found, in particular, that Plaintiff's car's damage "was most similar to … a 2017 Toyota Corolla that was collided into a tree at 16.2 mph."  *Id.*, Ex. 3 at 5.

**B.  Procedural History**

On October 25, 2021, Defendant removed Plaintiff's lawsuit to this Court.  Dkt. 1.  On August 26, 2022, Defendant moved for summary judgment on all of Plaintiff's claims.  Plaintiff did not file an opposition to the Motion.  In light of Plaintiff's lack of opposition, Defendant filed a reply only to point out Defendant's lack of opposition and to summarize the arguments it set forth in its moving brief.  Dkt. 20.

**III.    <u>STANDARD OF REVIEW</u>**

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'"  *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017)

(quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)).  A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If there is not, summary judgment is warranted.

Plaintiff, as noted above, does not oppose the Motion.  However, "[w]hen the non-moving party fails to oppose a summary judgment motion, the court must still apply the [] standards consistent with Fed. R. Civ. P. 56."  *White v. United States*, No. 05-cv-1785, 2007 WL 2193743, at *1 (W.D. Wash. July 27, 2007).  As such, "summary judgement cannot be granted solely because [a plaintiff] failed to oppose it."  *Baxter v. Nat'l Safety Council*, 275 F. App'x 632, 633 (9th Cir. 2008).  Therefore, the Court will review Defendant's motion in accordance with the normal standard for reviewing a summary judgment motion set forth above.

## IV.   **DISCUSSION**

Plaintiff asserts claims for (1) breach of contract; (2) breach of the duty to act in good faith; (3) violation of Washington's Insurance Fair Conduct Act ("IFCA"), RCW § 48.30.015; and (4) violation of Washington's Consumer Protection Act ("CPA"), RCW § 19.86.  *See* Compl. Plaintiff's claim for breach of contract is premised on Integon's alleged denial of coverage contrary to its obligations under the Policy (*id.* ¶¶ 3.1-3.4), and his extra-contractual claims are premised on Integon's alleged failure to handle properly Plaintiff's submitted insurance claim (*id.* ¶¶ 3.5-3.21).  Defendant contends that each of these claims are subject to dismissal on the ground that Plaintiff intentionally made material misrepresentations in connection with his insurance claim. Mot. at 12-15.

ORDER - 5

Under Washington law, "[i]t is well established that if the insured commits fraud with the intent of deceiving the insurance company, the insured forfeits any claim under the policy." *Johnson v. Safeco Ins. Co. of Am*., 178 Wash. App. 828, 845 (Wn. Ct. App. 2013).  The Policy itself contains several provisions, contained in a section entitled "Misrepresentation and Fraud," expressly permitting Integon to refuse coverage where the insured makes materially false representations in filing a claim.[2]  Naziri Decl., Ex. 6 at 38-39; *see Onyon v. Truck Ins. Exch*., 859 F. Supp. 1338, 1341 (W.D. Wash. 1994) ("Under Washington law, a clause voiding an insurance policy for the insured's material misstatement is enforceable.").  Moreover, Washington courts preclude plaintiffs from pursuing extra-contractual claims – including, as relevant here, claims for bad faith and violations of the CPA and IFCA – where they are found to have made material misrepresentations in the presentation of their insurance claims.  *See, e.g.*, *Johnson*, 178 Wash. App. at 847 ("where the insured intentionally misrepresents material facts during the claims process, the insured is not entitled to pursue bad faith or CPA claims" (citing *Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wash. 2d 643, 652-53 (Wn. Sup. Ct. 1988))); *Naxos, LLC v. Am. Fam. Ins. Co*., No. 18-cv-1287, 2020 WL 777260, at *19 (W.D. Wash. Feb. 18, 2020) (reasoning that claims under the IFCA and CPA, and for bad faith, would be precluded if insurer proved insured made misrepresentations in insurance claim).  Accordingly, Plaintiff cannot prevail on any of his claims if he had intentionally made material misrepresentations in connection with his insurance claim.

The evidence is overwhelming that Plaintiff deliberately misrepresented the circumstances surrounding the damage to his car.  As noted above, Plaintiff stated to Integon that his car had been

---

[2] For example, the Policy provides: "We may cancel this Policy and/or may not provide coverage under this Policy if you, a family member or anyone else seeking coverage under this Policy concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim." Naziri Decl., Ex. 6 at 39.

ORDER - 6

hit by another vehicle while parked on the street outside of his apartment building.  Naziri Decl., Ex. 2.  The inspection reports proffered by Defendant sharply undermine that story.  The first report, prepared by an Integon employee following her physical inspection of the vehicle, concluded that the damage was inconsistent with Plaintiff's account given the nature of the damage and the lack of debris where Plaintiff claims his car was parked.  *See* Naziri Decl., Ex. 3.  The second report, prepared by TCC based on its review of photographs of the damage, concluded that the vehicle had struck a narrow, pole-type object while in motion.  *See* Mahoney Decl., Ex. B.  The third, a supplemental report prepared by TCC after its physical inspection of the vehicle and analysis of the EDR data, restated its prior conclusion after finding that, at the time of impact, the car's headlights had been illuminated and it had been traveling at 27 miles per hour before rebounding.  *See id*., Ex. C.  These reports provide significant evidence that Plaintiff's car had not been damaged by a hit-and-run collision while in street parking, but instead had been in motion and was driven into some non-vehicular object.  Moreover, given the nature of the damage, and Amie Hudson's declaration that Plaintiff had abruptly changed his account as to where the collision took place – *i.e.*, from a parking lot with video surveillance to street parking without it (*see* Hudson Decl. ¶ 3) – the evidence proffered by Defendant strongly indicates that Plaintiff was aware that his car had not been damaged in the manner he represented to Integon.

Confronted with substantial evidence that he intentionally misrepresented the circumstances of the collision and the cause of his car's damage, Plaintiff was required to "set out specific facts showing a genuine issue for trial" in order to survive summary judgment.  *See InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 657 (9th Cir. 2020); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1061 (9th Cir. 2011) ("[t]o survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts").  Plaintiff

fails to do so.  As noted above, he offers no response to Defendant's motion.  The only evidence in the record that could conceivably support Plaintiff's version of events is the Luker report, which concluded that the damage was consistent with Plaintiff's account.  *See* Neal Decl., Ex. 3.  The Court, however, finds that report to be unconvincing and insufficient to create a genuine issue for trial.  While it purports to rely on the declaration of a witness who claims to have observed debris where Plaintiff alleges the collision took place (*see id.*, Ex. 3 at 3), that declaration is not attached to the report or included elsewhere in the record.  Moreover, in comparing the car's damage to that sustained by other similar vehicles, the Luker report found that Plaintiff's car's damage "was most similar to … a 2017 Toyota Corolla that was collided into a tree at 16.2 mph." *Id.*, Ex. 3 at 5.  That finding does not support Plaintiff's account that his car was hit while parked, but instead supports TCC's conclusion that his car became damaged after striking, while in motion, a pole-like object.

Accordingly, there exists no triable issue as to whether Plaintiff intentionally misrepresented to Integon that his vehicle was damaged by a hit-and-run accident while stationary in street parking.  The evidence makes clear that Plaintiff fabricated those facts, and concealed that his car had actually been damaged by being driven into some non-vehicular object at some other location.  Moreover, the Court finds that Plaintiff's misrepresentations, which related to fundamental aspects of the car's collision and cause of damage, were material as a matter of law. *See Ki Sin Kim v. Allstate Ins. Co*., 153 Wash. App. 339, 354-55 (Wn. Ct. App. 2009) ("While materiality is generally a mixed question of law and fact, it may be decided as a matter of law if reasonable minds could not differ on the question." (quoting *Onyon*, 859 F. Supp. at 1341) (quotation marks omitted)).  Therefore, no reasonable juror could conclude that Plaintiff did not intentionally make material misrepresentations to Integon about the damage to his car.

ORDER - 8

Having intentionally made material misrepresentations in connection with his insurance claim, Plaintiff is precluded from asserting his contract-based claim for coverage and his extra-contractual claims for bad faith and violations of the CPA and IFCA.  *See, e.g.¸ Johnson*, 178 Wash. App. at 845-47; *supra* at 6.  Defendant, accordingly, is entitled to summary judgment on all of Plaintiff's claims.[3]

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Integon's motion for summary judgment on all of Plaintiff's claims (Dkt. 14).  This case is hereby DISMISSED.

SO ORDERED.

Dated:  November 28, 2022

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[3] Defendant sets forth additional grounds for dismissing Plaintiff's extra-contractual claims (Mot. at 15-22), however this Court need not review them given its finding that all such claims are precluded for the reason discussed above.

ORDER - 9